IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| J.S.X. through his next friend D.S.X., C.P.X. through his next friend S.P.X., and K.N.X. through his next friend Rachel Antonuccio, for themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JERRY FOXHOVEN in his official capacity as Director of the Iowa Department of Human Services; RICHARD SHULTS in his official capacity as Administrator of the Division of Mental Health and Disability Services; MARK DAY in his official capacity as Superintendent of the Boys State Training School,<br><br>Defendants. | Case No. 4:17-CV-00417-SMR-HCA<br><br>ORDER ON MOTIONS |

This matter involves allegations of unconstitutional conditions at the Iowa Boys State Training School ("the School"). Before the Court are various pre-trial motions: (1) Plaintiffs' Motion in Limine, [ECF No. 169]; (2) Plaintiffs' Motion to Substitute Expert Witness, [ECF No. 171]; and (3) Defendants' Motion to Present Evidence via Video Technology, [ECF No. 167]. The motions are fully submitted and ready for decision. For the reasons set out below, Plaintiffs' motions are GRANTED; Defendants' motion is DENIED.

## I. ANALYSIS

### *A. Motion in Limine*

Plaintiffs filed a Motion in Limine seeking to exclude from trial evidence of events taking place after the close of discovery on November 2, 2018. They propose limiting the scope of trial to the issue of Defendants' liability and then, if necessary, the Court can consider post-discovery

events to fashion an appropriate remedy. Plaintiffs argue that, absent an evidentiary cut-off date, they will likely have to counter evidence presented for the first time at trial, which they will not have seen and for which they will not have had adequate time to prepare.

Plaintiffs' request is rooted in the Federal Rules of Civil Procedure. "The purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice." *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968). To that end, the federal rules require parties to disclose to one another information they "may use to support [their] claims and defenses," including the identities of individuals with such information (and the subjects of the information they have) as well as documents and other tangible evidence the parties may use to support their respective positions. *See* Fed. R. Civ. P. 26(a)(1). Parties have an ongoing obligation to revise these disclosures and various evidentiary statements "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Such supplementations "should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Advisory Committee Notes to the 1993 Amendments to Fed. R. Civ. P. 26(e), 28 U.S.C.A., p. 38. The federal rules allow the Court to exclude from trial evidence not properly disclosed. *See* Fed. R. Civ. P. 37(c)(1).

Defendants resist the motion by arguing that Plaintiffs seek injunctive relief and must therefore show that the unconstitutional practices at issue "are likely to affect [them] in the future." *Butler v. Dowd*, 979 F.2d 661, 674 (8th Cir. 1992); *see also Farmer v. Brennan*, 511 U.S. 825, 846 (1994) (finding that, in order to show they are eligible for an injunction, plaintiffs challenging the conditions of their confinement under the Eighth Amendment "must demonstrate the continuance

of [the constitutional violation] during the remainder of the litigation and into the future"). They argue this allows them to present evidence of changes to the conditions at the School that take place any time before the beginning of trial. The Court disagrees. Post-discovery developments regarding conditions at the School are relevant to whether Plaintiffs are entitled to the injunctive relief they seek. It does not follow, however, that this excuses Defendants from their duty to disclose relevant information to Plaintiffs in a timely manner. The cases Defendants cite in their brief do not stand for that proposition, and they do not require Plaintiffs to present arguments as to conditions about which information has been improperly withheld.

The Court is concerned with Defendants' compliance with their ongoing duty to disclose. In their resistance to Plaintiffs' Motion in Limine, they argue "[t]rial has been continued for three months, bringing with it three months of additional opportunities for changes in circumstances." [ECF No. 185 at 2]. They state that their witnesses' answers "will include information that may have been developed between November 2[, 2018] and June 6[, 2019]." *Id*. They add that the "testimony at trial will include the status of mental health services at [the School] *at the time of trial*, which may involve some new information." *Id*. These statements strongly suggest Defendants intend to introduce for the first time at trial issues on which Plaintiffs have not had an opportunity to take discovery or otherwise prepare. This will prejudice Plaintiffs, who cannot possibly be expected to respond to new information sprung on them at trial, and will undermine the fairness of the proceedings.

Plaintiffs appear to have formulated their request for an evidentiary cut-off date based on the approach taken by the United States District Court for the District of Massachusetts in *Rosie D. v. Romney*, 410 F. Supp. 2d 19 (D. Mass. 2006). That case involved a class action brought on behalf of low-income children suffering from serious emotional disturbances who claimed the

state failed to provide them with sufficient mental health services in violation of the Medicaid Act. The plaintiffs sought injunctive relief to remedy those failures. After the close of discovery, the Massachusetts Department of Developmental Services made various changes to its programs relevant to the ongoing nature of plaintiffs' injuries and, thus, their entitlement to injunctive relief. *See* Defs.' Br. in Opp'n to Pls.' Mot. in Lim. at 4, *Rosie D. v. Romney*, No. 3:01-CV-30199-MAP (D. Mass. March 18, 2005), ECF No. 195. The plaintiffs sought to exclude evidence at trial regarding activities or services taking place after the date discovery closed. *See Rosie D.*, 410 F. Supp. 2d at 30. The court viewed the requested cut-off as "obviously necessary," reasoning that "[p]ermitting [d]efendants to offer evidence acquired after the close of discovery would leave [p]laintiffs unprepared to challenge the newly-acquired material." *Id.* at 30 n.4. "The court concluded that, in determining liability, it would generally consider only evidence pre-dating [the close of discovery], with exceptions for good cause, but might consider evidence of later conduct if liability were found and it became necessary to consider an appropriate remedy." *Id.* at 30.

This is a sound approach. Clearly, an evidentiary cut-off date is necessary to avoid undue prejudice to the parties, to maintain the orderly operation of trial, and to promote substantial justice. At the same time, however, to the extent Defendants have implemented improvements at the School that impact Plaintiffs' entitlement to injunctive relief, such evidence is relevant and cannot be ignored. The Court is hesitant to prolong these proceedings past the trial in June, but Defendants appear to have given the Court little choice. The Court will not allow Defendants to present evidence at trial for which Plaintiffs have not had an opportunity to take discovery, and it is not clear there is enough time before trial to reopen discovery on recent developments at the School.

"[D]istrict judges have broad discretion in managing their dockets, including trial procedure and the conduct or pace of trials." *United States v. Hildebrand*, 928 F. Supp. 841, 844

(N.D. Iowa 1996). Based on this discretion, and for the reasons set out above, the Court GRANTS Plaintiffs' Motion in Limine. Absent a showing of good cause, made upon written motion, the evidence offered at trial shall be limited to conditions at the School existing on or before the close of discovery on November 2, 2018. Evidence of events occurring after that date shall be excluded. The trial will focus on Defendants' liability. If such liability is found, the Court will consider whether additional evidence is necessary to craft an appropriate remedy.

*B. Motion to Substitute Expert Witness*

Plaintiffs also move to substitute one of their expert witnesses, Dr. Barry Krisberg. Krisberg suffers from a chronic health condition. [ECF No. 172 ¶ 2].[1] When Plaintiffs retained him in April 2018, he viewed his condition as "largely manageable." *Id*. However, his health deteriorated over the course of his involvement in this matter. He continued to believe he was capable of testifying at trial, albeit remotely, but ultimately concluded his health could not tolerate the strains associated with preparing for and giving testimony. *See id*. ¶ 7. On January 24, 2019, he informed Plaintiffs' counsel of his intent to withdraw from this matter. *Id*. Plaintiffs' counsel claim they were unaware of various medical setbacks Krisberg suffered over the course of last year, which he cited in support of his decision. [ECF No. 171 at 4].

That same day, Plaintiffs informed Defendants of Krisberg's unavailability to testify at trial. [ECF No. 173-3 at 3]. On January 29, 2019, Plaintiffs informed Defendants that they retained a substitute expert, Dr. Andrea Weisman. *Id*. at 2. Weisman prepared an expert report under Rule 26(a)(2)(B), which Plaintiffs submitted to Defendants on February 8, 2019. [ECF No. 188-2].

[1] Materials detailing Krisberg's condition have been filed under seal. For the sake of privacy, they are referenced here in summary form only.

In her report, Weisman adopted Krisberg's "opinions as [her] own expert opinions in full." [ECF No. 188-2 at 10].

A motion to substitute an expert witness after the relevant disclosure deadline is treated as a motion to modify a pretrial scheduling order and is thus analyzed under Rule 16(b). *See Chrisman v. RMH Franchise Holdings, Inc.*, No. 5:16-CV-06144-DGK, 2018 WL 401819, at *1 (W.D. Mo. Jan 12, 2018). In relevant part, Rule 16(b) states that a pretrial schedule—which includes the deadline to disclose expert witnesses—"may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). "'[T]he existence or degree of prejudice to the party opposing the modification' and other factors may also affect the decision." *Id.* (alteration in original) (citation omitted).

Defendants argue Plaintiffs did not act diligently because they should have made alternative plans sooner, given Krisberg's condition. They allege Krisberg was clearly in poor health during his various engagements in this case in 2018. The Court disagrees with this line of argument. Plaintiffs had no reason to doubt Krisberg's assertions that his condition was under control at the time he was retained. Although he had health problems, nothing suggests to the Court that Plaintiffs knew, or should have known, they were so severe that he would not be able to testify at trial. Krisberg completed the work that was asked of him, and Plaintiffs had no knowledge of his medical setbacks. The Court sees no event of which Plaintiffs were aware that should have prompted them to seek a substitute expert witness at an earlier time.

It is undisputed that Plaintiffs acted promptly once they knew of Krisberg's unavailability to testify. They notified Defendants of his unavailability the same day they learned of it. Within

a week, Plaintiffs notified Defendants of their substitute expert and filed their motion to substitute. In less than two weeks after learning of Krisberg's unavailability, Plaintiffs provided Defendants with Weisman's Rule 26 disclosures.

The Court also finds any prejudice to Defendants will be minimal. There remain three months until trial. Weisman has adopted Krisberg's opinions in full. To further limit the risk of prejudice to Defendants, the Court imposes the following conditions on Weisman's substitution: (1) Weisman may not testify in any manner that is contrary to or inconsistent with Krisberg's reports (both his original and rebuttal reports);[2] (2) to the greatest extent possible, Plaintiffs must make Weisman available for a deposition, at a location of Defendants' choosing, to be conducted no later than April 30, 2019;[3] and (3) Krisberg's reports and deposition testimony may be used for impeachment purposes at trial, consistent with the Federal Rules of Evidence.

Subject to the foregoing, Plaintiffs' Motion to Substitute Expert Witness is GRANTED.

*C. Motion to Present Expert Testimony via Video Technology*

Finally, Defendants ask the Court to allow their expert, Dr. Charles Scott, to testify via video technology. Scott resides in California. Defendants state, "Dr. Scott has a busy schedule and avoiding travel time would permit him additional efficiencies. Dr. Scott's contracted for rate is $800.00 an hour . . . . Defendants seek to avoid the cost of paying for travel expenses and travel

---

[2] This does not mean that her analysis must be the same; it can be different. However, she must reach the same conclusions as Krisberg.

[3] Defendants observe that Plaintiffs have not offered to pay for costs related to the substitution. However, "[g]enerally, in cases in which courts have awarded costs and expenses associated with the substitution of an expert, there has been some evidence of bad faith, fault, or tactical maneuvering on the part of the party making the substitution." *TIC—The Indus. Co. Wyo., Inc. v. Factory Mut. Ins. Co.*, No. 4:10CV3153, 2012 WL 2830867, at *10 (D. Neb. July 10, 2012) (citation omitted). Evidence of such misbehavior is absent here; thus the Court finds it inappropriate to order Plaintiffs to pay costs and other expenses associated with the substitution.

time." [ECF No. 167 at 1]. Plaintiffs generally do not resist the motion but, should the Court grant it, they ask the Court to issue certain procedural orders relating to the conduct of Scott's testimony.

Rule 43 establishes the default position that testimony in federal civil trials will be given live by witnesses physically present in the courtroom.

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, [the Federal Rules of Civil Procedure], or other rules adopted by the Supreme Court provide otherwise. For good cause, in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

Fed. R. Civ. P. 43(a); *see also Murphy v. Tivoli Enters.*, 953 F.2d 354, 359 (8th Cir. 1992) (specifying that the "open court" requirement means witnesses must be present in the courtroom when giving testimony). The United States Court of Appeals for the Eighth Circuit has observed that "[t]he federal rules strongly favor the testimony of live witnesses wherever possible, so that the [fact finder] may observe the demeanor of the witness to determine the witness's veracity." *Murphy*, 953 F.2d at 359.

The Court endorses the federal rules' preference for live testimony, and it finds Defendants have failed to show "good cause" or "compelling circumstances" to warrant Scott's testimony via video technology. The mere inconvenience to Scott of having to give live testimony in Iowa is not compelling. Being called to testify at trial is inherent in a retained expert's duties. So, too, is it inherent that the party retaining the expert will have to pay his or her fee in connection with the testimony, including travel expenses. Given the absence of factors that make these ordinary circumstances compelling, the Court DENIES Defendants' motion.

## II. CONCLUSION

For the foregoing reasons:

1. Plaintiffs' Motion in Limine, [ECF No. 169], is GRANTED. Absent a showing of good cause, made upon written motion, the evidence offered at trial shall be limited to conditions at the School existing on or before the close of discovery on November 2, 2018. Evidence of events occurring after that date shall be excluded.

2. Plaintiffs' Motion to Substitute Expert Witness, [ECF No. 171], is GRANTED, subject to the following: (1) Weisman may not testify in any manner that is contrary to or inconsistent with Krisberg's reports (both his original and rebuttal reports); (2) to the greatest extent possible, Plaintiffs must make Weisman available for a deposition, at a location of Defendants' choosing, to be conducted no later than April 30, 2019; and (3) Krisberg's reports and deposition testimony may be used for impeachment purposes at trial, consistent with the Federal Rules of Evidence.

3. Defendants' Motion to Present Evidence via Video Technology, [ECF No. 167], is DENIED.

IT IS SO ORDERED.

Dated this 13th day of March, 2019.

______________________________
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT