1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


- - - - - - - - - - - - - - - - X
J.S.X., Through His Next Friend :
D.S.X.; C.P.X., Through His    :
Next Friend S.P.X.; K.N.X.,    :
Through His Next Friend Rachel  :
Antonuccio, For Themselves and  :
Those Similarly Situated,       :
                                :
        Plaintiffs,             :
                                :
vs.                             :      Case No. 4:17-cv-00417
                                :
JERRY FOXHOVEN, in his Official :
Capacity as Director of Iowa    :
Department of Human Services;   :
RICHARD SHULTS, in his Official :
Capacity as Administrator of    :
the Division of Mental Health   :
and Disability Services; and    :
MARK DAY, in his Official       :
Capacity as Superintendent of   :
the Boys State Training School, :      <u>HEARING TRANSCRIPT</u>
                                :
        Defendants.             :
- - - - - - - - - - - - - - - - X


                        Courtroom, Fourth Floor
                        U.S. Courthouse
                        123 East Walnut Street
                        Des Moines, Iowa
                        Friday, May 3, 2019
                        8:59 a.m.


BEFORE:  THE HONORABLE HELEN C. ADAMS, Chief Magistrate Judge.
         THE HONORABLE STEPHANIE M. ROSE, Judge.



            KELLI M. MULCAHY, CSR, RMR, CRR
                United States Courthouse
            123 East Walnut Street, Room 115
                Des Moines, Iowa 50309

APPEARANCES:

For the Plaintiffs:        HARRY FRISCHER, ESQ.
                           MARISSA C. NARDI, ESQ.
                           Children's Rights
                           88 Pine Street, Suite 800
                           New York, New York  10005

                           NATHAN D. KIRSTEIN, ESQ.
                           Disability Rights Iowa
                           400 East Court Avenue, Suite 300
                           Des Moines, Iowa  50309

                           TIMOTHY R. FARRELL, ESQ.
                           KATELYN E. SANER, ESQ.
                           Ropes & Gray, LLP
                           191 North Wacker Drive
                           32nd Floor
                           Chicago, Illinois  60606

For the Defendants:        GRETCHEN WITTE KRAEMER, ESQ.
                           MATTHEW K. GILLESPIE, ESQ.
                           ANAGHA DIXIT, ESQ.
                           Assistant Attorneys General
                           Hoover State Office Building
                           1305 East Walnut Street
                           Des Moines, Iowa  50319

1              P R O C E E D I N G S

2          (In open court.)

3          MAGISTRATE JUDGE ADAMS:  Please be seated.

4     Good morning.

5          MR. FARRELL:  Good morning, Your Honor.

6          MR. FRISCHER:  Good morning, Your Honor.

7          MAGISTRATE JUDGE ADAMS:  We are here this morning in

8    J.S.X., et al. vs. Foxhoven, et al., which is case 4:17-cv-417.

9    We are here for the final pretrial conference.

10        Judge Rose has been able to join us, at least for the

11   beginning of our conference, and her law clerk Joe is also with

12   us.

13        Let's start with roll call.  If we could just have someone

14   from the plaintiffs' side indicate who is here today on behalf

15   of the plaintiffs.

16        MR. FRISCHER:  Your Honor, I'm Harry Frischer from

17   Children's Rights.  To my right is Nathan Kirstein from

18   Disability Rights Iowa.  To my left is Marissa Nardi, also from

19   Children's Rights.

20        MS. NARDI:  Hi, Your Honor.

21        MR. FRISCHER:  To her left is Timothy Farrell from

22   Ropes & Gray, and finally Katelyn Saner, also from Ropes & Gray.

23        MAGISTRATE JUDGE ADAMS:  On behalf of Defendants, who

24   do we have present for the conference?

25        MS. KRAEMER:  Good morning, Your Honor.  Gretchen

1  Kraemer and Ana Dixit and Matthew Gillespie.

2            MAGISTRATE JUDGE ADAMS:  All right.  Great.

3      All right.  Let me start by telling you what I have.  I do

4  have a copy of the final pretrial order that you've submitted,

5  along with the attachments to it, primarily dealing with your

6  exhibit lists and then also deposition notations as to potential

7  depositions that will be used at trial.

8      Additionally, we have a copy of Plaintiffs' trial brief and

9  also a copy of the defendants' trial brief, and then in addition

10  to that we also have a copy of the memorandum of law that the

11  plaintiffs have filed relating to use of depositions at trial.

12      And then lastly, I have a copy of the motion to quash which

13  the defendants filed on May 1st in the case.  I do want to spend

14  a little bit of time just getting a little better understanding

15  on that motion to quash.  I know the plaintiffs have not yet had

16  time to file a written response to that, and we'll deal with

17  that today in terms of setting a time for that, but I do at

18  least want to discuss that with you briefly.

19      All right.  Does anybody think there is anything else that

20  I should have in terms of things that have been filed?

21      Anything on behalf of the plaintiffs?

22            MR. FRISCHER:  No, Your Honor.  That's complete.

23            MAGISTRATE JUDGE ADAMS:  Okay.  Anything on behalf of

24  Defendants?

25            MS. KRAEMER:  No.  Thank you, Your Honor.

1    MAGISTRATE JUDGE ADAMS:  All right.  And then we do

2 also have in front of me copies of the defendants' exhibits,

3 which are in boxes in front of the table in front of the bench,

4 and then I assume that in the large binder we have a copy of the

5 plaintiffs' exhibits -- or defendants' exhibits at this time as

6 well.

7    MS. KRAEMER:  Your Honor, the binder are classes of

8 Plaintiffs' exhibits that the defendants have addressed in their

9 trial brief so it's not a complete set.

10    MAGISTRATE JUDGE ADAMS:  All right.  And where are we

11 in terms of the defendants' exhibits, having those ready for the

12 Court?

13    MS. KRAEMER:  Your Honor, the defendants' exhibits are

14 ready for you.

15    MAGISTRATE JUDGE ADAMS:  I'm sorry.  I apologize.  I

16 need to ask the plaintiffs.

17    Do I have a copy of all of your exhibits as well?

18    MR. FARRELL:  No, Your Honor.  And apologies for that.

19 In our review of the rules, it wasn't clear to us that today was

20 the day to bring a full set.  It was our understanding that it

21 was prior to trial.  But we are happy to get the full set to you

22 with all due haste.

23    MAGISTRATE JUDGE ADAMS:  Okay.  Well, let's talk about

24 that as we go through because I know there are some objections,

25 and I just want to see where you are with respect to dealing

1    with each side's objections.  I also want to talk about whether

2    or not there are any duplicate exhibits contained in Defendants'

3    and Plaintiffs' exhibits.  But we'll do that when we hit the

4    exhibits section, okay?

5         All right.  So I have your final pretrial order.  I have

6    looked at it.  It does appear to be in proper form so we will

7    get that taken care of, and I will get that signed today so that

8    the signed -- the Court's signed version is in the record so we

9    do have that taken care of.

10        All right.  We've got all your trial briefs so we're good

11   there.

12        The only motion that I'm aware of that's currently pending

13   is the motion to quash that the defendants filed.  Is anybody

14   aware of any other motions that are still pending and/or do you

15   anticipate filing any other motions prior to trial?

16        I'll start with Plaintiffs.

17             MR. FRISCHER:  No.  I think that is the only motion

18   that's pending, and at this point we don't anticipate additional

19   motions.

20             MAGISTRATE JUDGE ADAMS:  Okay.  How about on behalf of

21   Defendants, Ms. Kraemer?

22             MS. KRAEMER:  We agree with that assessment.

23             MAGISTRATE JUDGE ADAMS:  Okay.  Great.

24        Why don't we have just a brief discussion about the motion

25   to quash just so that Judge Rose and I can have a better

1  understanding about exactly what the issue is relating to the

2  witness, Ms. Nolan.  I did note in my review of your materials

3  that she is listed in the final pretrial order as a witness by

4  the defendants so I do -- and I did read the description that

5  was given.

6      Let me take that back.  Let me make sure I've got the right

7  page here.

8      Yes.  I have her as Witness No. 13 listed by the

9  defendants, and the description provided there as to her

10 testimony is that she will testify regarding the types of

11 placements available in Iowa, how the Boys State Training School

12 compares; the role of counsel for students, the parties, and the

13 Iowa juvenile courts in identifying needs and obtaining needed

14 services; important features of representing students who are

15 justice-involved; and then her experience with former plaintiff

16 G.R.X.

17     It's my understanding from the materials that I have so far

18 that Ms. Nolan is an attorney with the Youth Law Center and so

19 has had some experience in representing some of the individuals

20 who may have been at the boys' home at various times.

21     So let me start with the defendants, and if you could just

22 elaborate a little bit more for me on the issues relating to her

23 situation.  My understanding is, again, that Defendants were

24 going to call her and that you had a particular date for her to

25 be presenting testimony at trial.  And lastly, it's also my

1 understanding, although I'm kind of surmising this, that she's

2 not been deposed.

3      So if, Ms. Kraemer, you or someone on your team could

4 respond and give me some further information about that, I'd

5 appreciate it.

6           MS. KRAEMER:  Yes, Your Honor.

7      Ms. Nolan has not been deposed.  We worked with her

8 schedule, and she is an attorney, she has hearings of her own,

9 and we did identify a date.  She has indicated that she is

10 available the morning of the date that Plaintiffs have

11 subpoenaed her for but not the afternoon.  She has a hearing

12 already set at that time.  Obviously, we would prefer that the

13 date that she selected be the date that she present testimony

14 out of courtesy.

15      The motion to quash is mainly directed at the documents

16 sought.  I do recognize that the documents sought are based on

17 the representation in the pretrial order of the things that she

18 will testify to.

19      Ms. Nolan, obviously, as an attorney, will have documents

20 on these things that are client-specific, and so those things

21 would be protected by confidentiality.  Juvenile court records

22 are confidential, juvenile records are confidential, and,

23 obviously, by the attorney-client privilege.  The testimony that

24 she will be providing will be more general in nature so that it

25 is does not invade any of the confidences or privileges

1    involved.  So that's the nature for the motion to quash on the

2    subpoena.

3        She is a person that has been known to both sides.  She's

4    had interactions with Plaintiffs' counsel.  There was the mutual

5    client.  So she's not a surprise witness, and we would ask that

6    the request for documents be quashed because of the confidential

7    and privileged nature of the document request.  And we would

8    also ask that the Court honor her schedule and allow her to

9    testify as was arranged.

10        MAGISTRATE JUDGE ADAMS:  And is the joint client

11   G.R.X.?

12        MS. KRAEMER:  Yes.

13        MAGISTRATE JUDGE ADAMS:  Okay.  All right.  And my

14   understanding is you had talked to her and were originally

15   planning to call her to trial on June 18th?

16        MS. KRAEMER:  Yes.  That's when she said she was

17   available.

18        MAGISTRATE JUDGE ADAMS:  So then we have the subpoena

19   requesting her appearance at trial and to bring with her certain

20   documents, and that would move up her trial testimony time, I

21   believe, if I'm remembering correctly, to June 6th.  Does that

22   sound right?

23        MS. KRAEMER:  Yes.

24        MAGISTRATE JUDGE ADAMS:  And you're telling me she's

25   available in the morning of June 6 but not in the afternoon?

1          MS. KRAEMER:  That's what she represented.

2          MAGISTRATE JUDGE ADAMS:  Okay.  Based on what you

3    know, Ms. Kraemer, what would you anticipate your examination of

4    her, how long would that take?

5          MS. KRAEMER:  Maybe an hour.

6          MAGISTRATE JUDGE ADAMS:  Okay.  And are any of the

7    documents that are in her possession that are requested pursuant

8    to the subpoena, are any of those exhibits that either party has

9    put into their exhibit lists?

10          MS. KRAEMER:  No.

11          MAGISTRATE JUDGE ADAMS:  Okay.  Thank you.

12      Who wants to respond on behalf of the plaintiffs?  And

13    understand I will give you time to file a written response.  I

14    just really want to have a little bit better understanding today

15    of what the situation is and what's going on.

16          MR. FRISCHER:  Thank you, Your Honor.  And thank you

17    for the opportunity to explain our position.

18      The Court's read the description of what Ms. Nolan will

19    testify about.  That description was provided to us for the

20    first time on April 22nd, 2019, which is 10 or 11 days ago.

21    That's when we saw what Plaintiffs -- I'm sorry -- what

22    Defendants intended to elicit testimony about.

23      Ms. Nolan was not, her name was not, initially disclosed in

24    the initial mandatory discovery.  She wasn't disclosed as a

25    witness who would be expected to offer testimony about

1 Defendant.  She was disclosed for the first time in an amendment

2 to the initial disclosures made on the very last day of

3 discovery, which was November 2nd, 2018.

4    At that time, there was a very different understanding as

5 to what Ms. Nolan was going to testify about.  In their --

6 their initial pretrial order, they said -- I'm sorry -- in the

7 initial draft of the pretrial order that was submitted in

8 January, they said Ms. Nolan will testify regarding interactions

9 with DRI, regarding former plaintiff G.R.X., and other matters

10 relevant to the litigation.

11    As Your Honor may recall and as Judge Rose may recall,

12 there were allegations, there were discussions about Ms. Nolan

13 in the motion for class certification and the motions for

14 summary judgment.  There were allegations about interactions

15 between DRI and Ms. Nolan relating to G.R.X.  Frankly, we think

16 that arises from a complete misunderstanding on Ms. Nolan's part

17 on what the statutory obligations of a P & A are.

18    But regardless of that, we think all of that is irrelevant,

19 and in the motion for -- in the decision on the motion for class

20 certification, Judge Rose made a ruling and found that the

21 allegations, the discussion, or the evidence that was proffered

22 relating to Ms. Nolan had no bearing whatsoever on the motion

23 for class certification.

24    And after that ruling, after that ruling, 10 days ago or 11

25 days ago, we received from Defendants their updated disclosure

1  that she's not going to testify only about DRI, she's going to

2  testify about all these other things.

3      She was not deposed because she had no relevant evidence.

4  There was no indication that she was going to provide evidence

5  relating to anything relevant to the case, and Judge Rose's

6  ruling seemed to make that clear that what she had to say wasn't

7  relevant to the case.  And then I got the updated disclosure of

8  the new topics she was going to testify about on April 22nd.

9      We promptly served a -- or we initiated discussions.  We

10  told Ms. Nolan we'd be happy to talk with her, we'd be happy to

11  talk about whether a subpoena was necessary.  We didn't get a

12  response until after we served the subpoena.  So we served the

13  subpoena, and, as Your Honor noted, as I think counsel has

14  acknowledged, it's a narrowly tailored subpoena to exactly what

15  we need to cross-examine her, to rebut her in the event she

16  testifies.

17      So with all due respect to counsel, there's at least three

18  reasons why the subpoena -- why the motion to quash should be

19  denied.

20      First, it's a textbook example of exactly what a trial

21  subpoena is for.  There is abundant cases, there's abundant

22  authority in the treatises that a trial subpoena can be used as

23  a narrowly tailored device, well after the close of discovery,

24  to obtain documents that are necessary for cross-examination.

25  That's reason No. 1.

1    Reason No. 2 is it's also well established in this court

2    and other courts that Defendants do not have standing to oppose

3    a subpoena that's served on a third party.  If anyone is going

4    to address -- object on the grounds of privilege or whatever

5    grounds we heard from counsel, that's for the subpoenaed party

6    to object for -- to object to.

7    And I just want to read a very short sentence from Wright

8    and Miller's treatise on federal civil procedure, which says,

9    and I'm quoting, a motion to quash or for a protective order

10   should be made by the person from whom the documents, thing, or

11   electronically stored information are requested.  Numerous cases

12   have held that a party like standing -- a party lacks standing

13   to challenge a subpoena absent a showing that the objecting

14   party has a personal right or privilege regarding the subject

15   matter of the subpoena.  So that's the second reason the motion

16   should be denied.

17   The third reason the motion should be decided -- denied is

18   because there was absolutely no meet-and-confer, as required by

19   local rules, about this.  I'm happy to meet and confer with

20   Ms. Nolan.  I have a communication from her supervisor

21   suggesting she may be amenable to that.

22   But I'm happy to meet and confer with her about what

23   documents are necessary, which will depend on what the substance

24   of her testimony is.  I'm happy to meet and confer with her

25   about how we can avoid any of the privilege questions that

1  counsel objected to.  I'm happy to meet and confer with her as

2  to when she testifies.

3      We may not need her on the 6th if we can get the documents,

4  if there are documents on the 6th, in which case it may be

5  possible for her to testify on the 18th, the date originally

6  scheduled, and I will cross-examine her with those documents.

7  I'm happy to have that discussion with her.  I have requested

8  that discussion with her.

9      So the motion is not ripe, and, quite frankly, can be

10  denied today on that ground alone, in addition to the other two

11  grounds I have mentioned.  But the bottom, bottom line, Your

12  Honor, is we need documents relating to the substance of her

13  testimony, to the extent she testifies, sufficient to rebut or

14  cross-examine her.  It's a textbook example of a trial subpoena,

15  and the rest, I believe, we can work out with discussion.

16      I'm happy to answer questions if Your Honor has questions.

17          MAGISTRATE JUDGE ADAMS:  Sure.  I do have a couple.

18  First is my understanding is that the subpoena was served on May

19  1st.  Is that correct?

20          MR. FRISCHER:  Correct.

21          MAGISTRATE JUDGE ADAMS:  All right.  And I take it

22  from the description you've given me so far that at this point

23  in time you do not have written objections to the subpoena

24  pursuant to the Federal Rules of Civil Procedure from either the

25  Youth Law Center or Ms. Nolan?

1          MR. FRISCHER:  That's correct.  We just have the

2   motion to quash.

3          MAGISTRATE JUDGE ADAMS:  And I was just looking, but I

4   couldn't find it real quickly.  My recollection, and it may be

5   wrong, is it's a 14-day period to do that, but I wasn't 100

6   percent sure on that, so --

7          MR. FRISCHER:  I believe that's right.

8          MAGISTRATE JUDGE ADAMS:  All right.  And you've

9   addressed a number of the questions that I kind of have, one

10  being I was trying to figure out how it was going to be helpful

11  to have her testify on the 6th if you weren't going to get the

12  documents until the 6th, to be prepared to cross-examine her.

13  But what you're really trying to get, as I understand it, is the

14  documents that you can have that are not privileged prior to her

15  testifying so that you are able to prepare for her

16  cross-examination.

17         MR. FRISCHER:  Exactly correct, Your Honor.

18         MAGISTRATE JUDGE ADAMS:  Okay.  And you're not

19  necessarily opposed to, then, if you can get those documents

20  ahead of time, and you may be able to work that out through the

21  Youth Law Center, but if you can get those documents ahead of

22  time, you're not necessarily opposed to having her testimony

23  provided on June 18th, the date that was originally suggested?

24         MR. FRISCHER:  That's correct.  That's something I'd

25  certainly be willing to discuss with her.

1          MAGISTRATE JUDGE ADAMS:  Okay.  All right.  Thank you.

2          MR. FRISCHER:  Thank you.

3          MAGISTRATE JUDGE ADAMS:  That's helpful to know.

4     All right.  Anything you want to add to that, Ms. Kraemer,

5  before I move on, anything further at all?

6          MS. KRAEMER:  Yes.  Thank you, Your Honor.

7     Mr. Frischer initially stated that Ms. Nolan was not

8  identified until April 22nd, and then later in his description,

9  I think he accurately amended that statement to say that she was

10  listed in the initial draft of the pretrial order that was

11  disclosed in January.

12     There was a rather vague "and anything else related to

13  litigation" that I thought I should expound upon, and I added

14  more information on that in the amendment, but this wasn't a

15  last-minute surprise, and the goal of adding more information in

16  the designation in the pretrial order is to give people more

17  information, not to suddenly change something at the last

18  minute.

19          MAGISTRATE JUDGE ADAMS:  Just so my understanding was

20  that Plaintiff indicated that Ms. Nolan was first disclosed as a

21  witness on November 2nd of 2018, as a potential witness; is that

22  correct?

23          MR. FRISCHER:  That's correct.  The last day of

24  discovery.

25          MAGISTRATE JUDGE ADAMS:  Okay.  But then you did

1 further indicate that in the initial draft in January of when we

2 were starting to get ready for the final pretrial conference

3 that she was listed by the defendants at that time with some

4 description as to what her proposed testimony would be, but you

5 believe it's different than the description that I have

6 currently?

7          MR. FRISCHER:  Yes.  And I can read exactly what that

8 description is, Your Honor.

9          MAGISTRATE JUDGE ADAMS:  You don't have to.  You can

10 just put that in your response for me, your written response.

11 That would be fine.

12     And so what I'd like to do, if you could have your written

13 response to me by May 10th.

14          MR. FRISCHER:  Certainly, Your Honor.

15          MAGISTRATE JUDGE ADAMS:  And then to the extent that

16 there is the need for reply, and there may not be one, if

17 Defendants can provide that to me by May 14th.  And then, you

18 know, if you're able to work out a number of these issues with

19 Youth Law Center, Ms. Nolan, if you can let us know that as

20 well.

21     At this point I haven't had a chance to talk with Judge

22 Rose as to who is going to rule on the motion, given that it is

23 related to trial testimony, but I did want to at least have some

24 understanding from both sides as to what we were really fighting

25 about, and this discussion has helped in that regard.

1          MR. FRISCHER:  Thank you, Your Honor.

2          MAGISTRATE JUDGE ADAMS:  Thank you.

3      All right.  Let's talk, then, a little bit further about

4  witnesses.  When I looked through your final pretrial order, I

5  believe I came up with, it looked to me like, between the

6  parties, the number of live witnesses, non-duplicative live

7  witnesses, was 20 between the two parties, and then we did have

8  the issue relating to some deposition testimony.  So I came up

9  with about 20 total witnesses.  So I didn't count -- if you both

10  listed somebody, I didn't count them twice, I only counted them

11  once.

12      So I will tell you that typically, especially in a bench

13  trial, our preference would be that you only call the witnesses

14  once and that everybody puts on their testimony relating to that

15  witness at that time.  So I just want to see, is there any

16  reason we would not do that here?

17      Plaintiffs?

18          MS. NARDI:  Yes, Your Honor.  So we spoke with

19  opposing counsel, and I think we both agreed that we're

20  completely amenable to doing that, putting on each witness once

21  and then having the opposing party, assuming that they also have

22  that witness on their witness list, questioning them at that

23  point.

24          MAGISTRATE JUDGE ADAMS:  Okay.  So basically everybody

25  is going to do their -- we're not going to be worried about, to

1  be blunt, we're not going to be worried about scope of direct,

2  then, because, to the extent you call them, Defendant will do

3  their cross-examination, but if they were also going to call

4  them, they'll do their direct at that time?

5          MS. NARDI:  Precisely.

6          MAGISTRATE JUDGE ADAMS:  Okay.  Perfect.  I will note

7  that in the order when we do our final order after today's

8  conference, then.  That's good to know.

9          MS. NARDI:  Thank you, Your Honor.

10         MAGISTRATE JUDGE ADAMS:  All right.  You're welcome.

11    All right.  So do we have any scheduling issues relating to

12  any of the witnesses on either side?  I know we have some

13  experts.  Are there experts who have time constraints so that we

14  need to make sure that we know that they need to be done on a

15  particular day?

16    Anything on behalf of Plaintiffs?

17         MS. SANER:  Yes, Your Honor.  We've discussed this

18  briefly during our meet-and-confer last week, and Defendants

19  have pressed us to provide a date certain for witnesses, and

20  we've agreed, correct me if I'm wrong, to disclose our witness

21  order two weeks in advance of trial.

22    I think specific scheduling may be difficult to predict,

23  given that it's difficult to know how long exactly a direct and

24  a cross may go.

25         MAGISTRATE JUDGE ADAMS:  Do you have anybody scheduled

1   in, though, that's flying in and has to be -- you know, is just

2   going to be here for a day?

3          MS. SANER:  We do.  We have three experts flying in.

4   They have flexible schedules, and so --

5          MAGISTRATE JUDGE ADAMS:  Okay.

6          MS. SANER:  -- we can work, you know, they can be

7   available in the order that we present to the defendants for

8   them to testify.

9          MAGISTRATE JUDGE ADAMS:  Perfect.

10         MS. SANER:  One issue that did come up last week was

11  Defendants noted that one of their experts, Dr. Heilbrun, is

12  only able available to testify in their case in chief on the

13  last day of trial, which is June 19th.  We're concerned that

14  putting him on the last day could prevent any meaningful time

15  for rebuttal and so wanted to raise that issue with the Court.

16         MAGISTRATE JUDGE ADAMS:  June 19th, you said?

17         MS. SANER:  Correct.  It's the last day of trial, last

18  scheduled day.

19         MAGISTRATE JUDGE ADAMS:  Well, let me ask this:  Is

20  there any reason he can't be called first thing on the 19th so

21  that we get him done?

22         MS. KRAEMER:  Your Honor, we actually disclosed this

23  date on February 6th when we were selecting a new trial date.

24  But Dr. Scott is only available on June 17th.

25         MAGISTRATE JUDGE ADAMS:  Okay.  I'm lost.  You said

1  Dr. Heilbrun.

2          MS. KRAEMER:  Right.

3          MAGISTRATE JUDGE ADAMS:  But you're talking about

4  Dr. Scott.

5          MS. KRAEMER:  We have two witnesses that will be

6  flying in.  Dr. Scott is only available on one day, and

7  Dr. Heilbrun is not available the preceding week so will be

8  available the 19th.

9          MAGISTRATE JUDGE ADAMS:  Okay.  So Dr. Scott's

10  available what day?

11          MS. KRAEMER:  He is available on the 17th.

12          MAGISTRATE JUDGE ADAMS:  June 17th, okay.

13      But I don't see any reason -- I mean, I guess what I'm

14  trying to get at is I don't see any reason why you can't, since

15  these individuals are flying in for their testimony, if you have

16  someone else who is here locally, it would seem to me,

17  especially since it's a bench trial, that you could put those

18  experts on early in the day to get them done --

19          MS. KRAEMER:  That's our intent.

20          MAGISTRATE JUDGE ADAMS:  -- that day, yeah, so that

21  there should not be any issue.

22      I mean, bottom line is, on the 19th, if you don't finish

23  the testimony of Dr. Heilbrun for some reason, you can discuss

24  that with Judge Rose at that time, and if need be and it can't

25  be done, she can probably set up an alternate time for it to be

1   completed.  But I can't see any reason why you can't get him

2   done, especially if you start him at the beginning of the day.

3   So I think that makes sense, okay?

4        All right.

5          MS. KRAEMER:  Your Honor, may I also address some

6   scheduling issues?

7          MAGISTRATE JUDGE ADAMS:  Sure.

8          MS. KRAEMER:  We had just requested not only -- I

9   understand that there is a little flex in terms of when people

10  are going to be called, but not just the order, but the

11  anticipated date because we still have to staff the Boys State

12  Training School, and most of these witnesses work there, and so

13  my understanding is that we had an agreement with opposing

14  counsel two weeks in advance of trial to exchange a schedule,

15  and so that is why we've asked.  It's not just for this trial,

16  but also because they have to staff the school.

17         MAGISTRATE JUDGE ADAMS:  Sure.  And, I mean, that

18  makes sense, but, I mean, we have to be somewhat flexible

19  because nobody knows how long a particular witness -- you can do

20  your best to tell us how long a particular witness is going to

21  take, but if we've got three witnesses standing outside and

22  we're at 4 o'clock in the afternoon, it's probably not likely

23  we're going to get all three of those witnesses done so somebody

24  may have to come back the next day.

25       So, yes, I think that makes perfect sense.  We do

1   mandatorily require that you let each other know.  You know,

2   normally we only make you do it only 24, 48 hours in advance,

3   but I think this is a better approach, given that some of them

4   are your witnesses, your clients.  And it would seem to me that

5   Plaintiffs would want to work with you to get your people here

6   when they need them.

7        And, again, I know you want to have your trial go in a

8   particular order, but it is a bench trial, so if you had to move

9   a witness a little bit here or there, Judge Rose is going to

10  keep up with you, trust me, so that's not going to be an issue

11  you'd have if it was a jury trial, so I think you can be a

12  little bit flexible working with each other.

13       I'll just note in my order, then, that the lawyers are

14  going to exchange the order of witnesses and at least what you

15  currently have for an anticipated schedule two weeks in advance

16  of the trial date, okay, understanding that things change.  But

17  if you see something changing, as soon as you sort of recognize,

18  oops, that schedule's not going to work, let each other know.  I

19  mean, have that ongoing communication, both up until the time of

20  trial as well as during trial.

21       And Judge Rose is going to need to hear from you every day

22  who you're planning to call the next day, so, again, that's

23  information that you can provide to the Court.  It would be

24  helpful if you would give us a copy of what you're going to

25  exchange for your order of witnesses.  You don't have to file

1  that; you can just e-mail that in to the Court.  You can e-mail

2  that to Judge Rose and I to make sure that it's in the right

3  place for the time of trial, okay?

4      All right.  Just a couple of additional things with respect

5  to your witnesses.  Please make sure you've got enough witnesses

6  here for the day.  We don't want to have long periods of waiting

7  in between them.  We want to get them going as quickly as we

8  can.

9      Is there anybody on your witness list who you think you

10  might not call or do you think that it's likely that you will

11  call, between the two of you, all of the 20 individuals who are

12  listed live?

13      Plaintiffs?

14          MR. FRISCHER:  If I may have a second, Your Honor.

15          MAGISTRATE JUDGE ADAMS:  You can.

16          MR. FRISCHER:  Your Honor, we intend, Plaintiffs

17  intend to call, either live or by deposition where indicated,

18  all of the witnesses on our list, with the possible exception of

19  Richmond, who may not be necessary.

20          MAGISTRATE JUDGE ADAMS:  Okay.  Tanya Richmond?

21          MR. FRISCHER:  Yes.

22          MAGISTRATE JUDGE ADAMS:  Okay.  All right.  And then

23  if you do make that decision ultimately not to call

24  Ms. Richmond, if you can let defense counsel know that when you

25  make it so that they know they don't have to be concerned about

1 scheduling her.

2      All right.  How about on behalf of Defendants?

3           MS. KRAEMER:  Your Honor, we've pared down our list,

4 and I believe this represents who we will call.

5           MAGISTRATE JUDGE ADAMS:  Okay.  Fair enough.

6      Let's talk about and let me ask with respect to the live

7 witnesses, then, any accommodation issues that you're aware of

8 for any of them?  Any hearing issues, any mobility issues, do

9 you need an interpreter for anybody?  Anything of that nature

10 that you're aware of with respect to any of the witnesses?

11      Plaintiffs?

12           MR. FRISCHER:  None on our behalf, Your Honor.

13           MAGISTRATE JUDGE ADAMS:  Defendants?

14           MS. KRAEMER:  No.  Thank you, Your Honor.

15           MAGISTRATE JUDGE ADAMS:  Okay.  Great.

16      All right.  Let's talk next about exclusion.  Typically we

17 would exclude the witnesses from the courtroom until they've

18 testified, with the exception, obviously, of the parties.

19      What's your position with respect to that on behalf of the

20 plaintiffs?

21           MR. FRISCHER:  Your Honor, often the exclusionary rule

22 does not apply to experts, who are often permitted to hear

23 testimony that they may be commenting on.  I'm not sure that in

24 this case the logistics will work for that in any event, but we

25 have no problem with the usual rule, and I'd request that if the

1  logistics work out otherwise for the experts or if there is a --

2  necessary for an expert to listen to some testimony, we make the

3  request at that time.

4          MAGISTRATE JUDGE ADAMS:  All right.  Ms. Kraemer?

5          MS. KRAEMER:  Your Honor, we anticipated that the

6  typical exclusionary rule would apply, and we have scheduled our

7  experts -- they were only available limited times in June when

8  we were setting this trial so we won't even have the option of

9  having them listen to the other testimony so we would prefer

10  that that option not be allowed for anybody.

11          MAGISTRATE JUDGE ADAMS:  Well, based upon what you've

12  told me, I doubt anybody's going to have that option, just based

13  on the scheduling issues.  I will let you just raise that issue

14  with Judge Rose on an as-needed basis if it does come up.

15      So at this point what I'll do is I'll enter the exclusion

16  into the order, and that would be except for the parties at this

17  time.

18      So that would be, I'm taking it at this time, on behalf of

19  the plaintiffs that would be K.N.X., C.P.X., and J.S.X.; is that

20  correct?

21          MR. KIRSTEIN:  That's correct, Your Honor.

22          MAGISTRATE JUDGE ADAMS:  Okay.  And then who is going

23  to be the corporate representative or the agency representative

24  on behalf of Defendants at counsel table?

25          MS. KRAEMER:  Mr. Day.

1          MAGISTRATE JUDGE ADAMS:  Mr. Day?  Okay.  So it would

2   also not apply to him, then, as the representative.

3       Also, with respect to --

4          MS. NARDI:  Your Honor.

5          MAGISTRATE JUDGE ADAMS:  Yes.

6          MS. NARDI:  One more note.  So we already spoke with

7   opposing counsel about this.  So for our three named plaintiffs,

8   there's a very decent chance that their parents would like to

9   attend with them as well, and for most of the named plaintiffs,

10  their parents are also their next friend so also have legal

11  standing to be here.

12      So we wanted you to know when the named plaintiffs are

13  present at court for their testimony, there's a high likelihood

14  that one of their parents may be with them in court.

15         MAGISTRATE JUDGE ADAMS:  When you say "with them," I

16  assume none of the parents are testifying based on what I read

17  in the witness lists.

18         MS. NARDI:  That's correct.

19         MAGISTRATE JUDGE ADAMS:  Unless Judge Rose enters an

20  order sealing portions of the testimony, which we don't have in

21  place at this time, anybody's welcome to be in the courtroom.

22  If portions or all of the testimony would be sealed, then, yes,

23  their parents can be here while they're testifying, while that

24  particular child is testifying.  But then if that child is not

25  testifying and another child is testifying, the parent of Child

1  A can't be in the courtroom if it's sealed.

2      Am I tracking with you?

3          MS. NARDI:  Yes.  That's correct.  Thank you, Your

4  Honor.

5          MAGISTRATE JUDGE ADAMS:  Fair enough.  All right.

6      With respect to your clients, typically, just as with

7  anybody other than lawyers who come into the courtroom, they

8  would not be allowed to bring in their cell phones or their

9  computers or that type of thing.  However, given Mr. Day's

10 position, if he needed to have his cell phone with him, I can

11 enter an order allowing him to have it with him.  It has to be

12 turned off, not on vibrate, turned completely off, at any point

13 in time that he's in the courtroom.  But I can enter an order

14 allowing him to have it, if you think that would be something

15 that he needs.  And if you want to check with him and let me

16 know, that's fine too.

17         MS. KRAEMER:  So my understanding is he would be able

18 to bring it into the courthouse and use it on breaks.  I think

19 that would be very beneficial.

20         MAGISTRATE JUDGE ADAMS:  Correct.  He can use it on

21 breaks, yes.

22     All right.  I'm going to enter an order because they will

23 have to have that for the CSOs to let him in with it, so I can

24 certainly do that.

25         MS. KRAEMER:  Thank you.

1            MAGISTRATE JUDGE ADAMS:  All right.  Let's talk about

2   depositions.  So I notice that there are a number of individuals

3   who may testify by deposition so let's talk about those.

4        Plaintiffs' counsel, tell me who you're planning to have

5   for sure by deposition, as I understand it, and then you also

6   may have deposition testimony about other people that you want

7   to provide if they don't testify live, even though they're

8   listed.  So can you walk me through that?

9            MS. NARDI:  Certainly, Your Honor.

10       So Plaintiffs intend for four deponents to definitely

11  testify during Plaintiffs' case in chief through their

12  depositions.

13           MAGISTRATE JUDGE ADAMS:  Okay.

14           MS. NARDI:  Those four deponents are Jerry Foxhoven,

15  who is one of the named defendants.

16           MAGISTRATE JUDGE ADAMS:  Okay.

17           MS. NARDI:  Louis Wright.

18           MAGISTRATE JUDGE ADAMS:  What was the second one?

19           MS. NARDI:  Louis Wright, W-r-i-g-h-t; Craig

20  Schneider; and Beverly Jones.

21           MAGISTRATE JUDGE ADAMS:  And what are their roles?

22           MS. NARDI:  Sure.  So Louis Wright is the psychologist

23  at the school.  He's been the school psychologist for nearly 30

24  years, and during most of that time he was the only psychologist

25  at the school.

1          MAGISTRATE JUDGE ADAMS:  All right.

2          MS. NARDI:  Craig Schneider is a newer school

3  psychologist who joined BSTS last year, and his title is

4  Psychologist 3, which is the highest level at BSTS.  And Beverly

5  Jones is a long-time educator at BSTS, and she's highly relevant

6  to the ADA and RE claims in the litigation, and she's the only

7  educator on either witness list.

8          MAGISTRATE JUDGE ADAMS:  And none of those people -- I

9  shouldn't say that.  Other than Mr. Foxhoven, are any of those

10  individuals -- I don't believe they were, but let me just ask,

11  are any of those individuals listed by the defendant as someone

12  they're going to call, other than Mr. Foxhoven?

13          MS. NARDI:  Correct.  So none of those three

14  witnesses, other than Mr. Foxhoven, the fourth, are on

15  Defendants' witness list.

16          MAGISTRATE JUDGE ADAMS:  All right.

17          MS. NARDI:  So we think it will be efficient to call

18  them during Plaintiffs' case in chief rather than calling them

19  live, which we expect will be much longer and less efficient and

20  more practical for the Court.

21          MAGISTRATE JUDGE ADAMS:  These depositions, are they

22  video-recorded depositions?

23          MS. NARDI:  Yes.  They are video-recorded depositions,

24  and Plaintiffs intend to only use select portions of those video

25  depositions the plaintiffs designated to Defendants in January.

1      So very recently Plaintiffs even slimmed down what they

2    intended to use for those four witnesses in the interest of

3    efficiency.  So Plaintiffs selected excerpts of what we already

4    designated to opposing counsel that would be much shorter for

5    the efficiency and ease of the Court in general.

6      So for Wright, for example, his testimony will only be 14

7    minutes in video time, Schneider's will be 2, Jones will be 10.

8    And Foxhoven's will be longer, it's about two hours, but that's

9    because he made so many critical admissions during his party

10   deposition, it will be pertinent for the Court to hear all of

11   that.

12           MAGISTRATE JUDGE ADAMS:  And the video, the CDs or

13   whatever you're going to be giving to the Court, do those only

14   have on them the portions of the deposition that you're offering

15   or are they all of the deposition and you're just planning to

16   scan through to the portions that you want to play?

17           MS. NARDI:  So what we were planning on doing is only

18   having the portions that were designated to be played at trial

19   on those videos, which we have the capabilities of just having

20   those excerpts so that it will run very smoothly during the

21   course of trial.

22           MAGISTRATE JUDGE ADAMS:  All right.  And can you

23   provide those to the Court ahead of time?

24           MS. NARDI:  Yes.

25           MAGISTRATE JUDGE ADAMS:  All right.  Now, there were

1   some others that were maybes, right, in terms of deposition

2   testimony?

3               MS. NARDI:  Correct.

4               MAGISTRATE JUDGE ADAMS:  Tell me who those people are.

5               MS. NARDI:  Sure.  So those six others are all either

6   defendants or 30(b)(6) designees or deponents.

7               MAGISTRATE JUDGE ADAMS:  Okay.

8               MS. NARDI:  So all of these witnesses, except for two,

9   are going to be testifying already so we don't see the need to

10  use their deposition at trial --

11              MAGISTRATE JUDGE ADAMS:  Okay.

12              MS. NARDI:  -- unless, for example, we need to impeach

13  them, which, as you know, is permitted under 32(a)(2), Federal

14  Rules of Civil Procedure, or to the extent that they are not

15  called by Defendants during Defendants' case in chief, in which

16  case we just reserve the right to be able to play those portions

17  of their deposition designations only to the extent that they

18  don't appear live.  So we have no intention to use any of these

19  six unless it's absolutely necessary during the course of trial.

20              MAGISTRATE JUDGE ADAMS:  All right.  And let me ask

21  you one other question about that.  If the defendant doesn't

22  call one of them, am I understanding correctly that your intent

23  is that you would not call that person live but rather you'd

24  present it by deposition?

25              MS. NARDI:  Exactly.  For efficiency of the Court.

1          MAGISTRATE JUDGE ADAMS:  Okay.  And who are they?

2          MS. NARDI:  Those six are Defendant Shults --

3          MAGISTRATE JUDGE ADAMS:  Okay.

4          MS. NARDI:  -- Defendant Day, 30(b)(6) designee and

5     deponent Brett Lawrence --

6          MAGISTRATE JUDGE ADAMS:  Okay.

7          MS. NARDI:  -- 30(b)(6) designee and deponent Amanda

8     Sizemore, 30(b)(6) designee Lynn Allbee, and 30(b)(6) designee

9     Dr. Augspurger.

10          MAGISTRATE JUDGE ADAMS:  I am assuming, but I want to

11     ask, that your position with respect to all of the depositions,

12     including the four you plan to use and the six that are maybes,

13     is that pursuant to Rule 32, you should be able to use them for

14     any purpose that you can use the deposition of a party or a

15     party representative.

16          MS. NARDI:  Yes.  Or a managing agent.

17          MAGISTRATE JUDGE ADAMS:  Okay.

18          MS. NARDI:  And we also take the position that all of

19     the depositions are also independently admissible under Federal

20     Rule of Evidence 801(d)(2) as admissions by party opponents or

21     employees of a party, and that was laid out in Plaintiffs'

22     brief.

23          MAGISTRATE JUDGE ADAMS:  All right.  Thank you.

24          MS. NARDI:  Thank you.

25          MAGISTRATE JUDGE ADAMS:  Ms. Kraemer, any response or

1   any additional information you want me or Judge Rose to know

2   about currently relating to the depositions?  And you can

3   address them if you have any response in those two categories,

4   sort of the four who they're planning to use and the six that

5   are maybes only if they're not called live.

6          MS. KRAEMER:  Mr. Gillespie will be addressing that.

7          MAGISTRATE JUDGE ADAMS:  Okay.  Sure.

8          MR. GILLESPIE:  Your Honor, if I may just very briefly

9   just with regard to the four, because I don't think that the

10  others necessarily need to be discussed at this time because I

11  think everyone has indicated that we intend to call those

12  witnesses.

13      I initially wanted to note that we object to the filing of

14  the additional brief in addition to the trial brief.  It seemed

15  to us that that should have been included with the trial brief

16  materials.

17      Plaintiffs in their brief did concede that the 32(a)

18  analysis is the appropriate analysis here, and I think it's

19  important to note that as Wright and Miller notes, that Rule

20  32(a)(3) does not change the long-established principle that

21  live testimony is preferred.

22      The Northern District, in the *Estate of Thompson*, which is

23  291 F.R.D. 297, noted that Rule 32(a)(3) does not abrogate the

24  Court's authority to exclude evidence whose probative value is

25  outweighed by, among other things, its needlessly cumulative

1    nature.

2         Now, for Director Foxhoven, we've already indicated we

3    intend to call him.  He will be available for live testimony,

4    and that needlessly cumulative testimony is exactly our concern.

5    We have every reason to expect that Director Foxhoven's going to

6    be able to testify to all of the issues that they raise in their

7    deposition, and under Rule 403, we think it would be a waste of

8    everyone's time to also have the deposition designations in

9    there as well.

10        For Dr. Schneider and Mr. Wright and Ms. Jones, I think

11   it's important to note that we don't believe that either -- any

12   of those three fall under the managing agent definition.

13   Clearly, being an employee alone is insufficient, and the Eighth

14   Circuit noted in *Skogen vs. Dow Chemical Company*, which is 375

15   F.2d 692, a managing agent must, one, have interest in

16   litigation -- in the litigation identified with their principal;

17   and, two, must also act with, quote, superior authority and

18   general autonomy, being invested with broad powers to exercise

19   their discretion with regard to the subject matter of the

20   litigation.

21        I think under that definition, it's clear these three

22   witnesses don't fall within that.  Both Dr. Schneider and

23   Ms. Jones are no longer with the school.  Dr. Schneider was with

24   the school for less than a year.  None of these three witnesses,

25   deponents, had any administrative authority.  They lacked a

1   supervisory role.  They were not supervisory roles.  They were

2   uninvolved in the litigation, save for the plaintiffs'

3   depositions thereof.  And at all times they were each directly

4   supervised by either the superintendent or the treatment program

5   administrator or the education administrator so they weren't --

6   they weren't managing anyone.  They weren't taking any sort of

7   supervisory role.

8       And so for those reasons, Your Honor -- we'd also like to

9   note that in the instance of Mr. Wright, we did not initially

10  list him as a witness when we were discussing this in

11  preparation for the March date because at that time he had a

12  surgery that he was going to undergo, and that was the reason

13  why we didn't initially designate him, and afterwards it was

14  clear to us that additional designations would be not received

15  well over the course of this pretrial preparation.  But that is

16  the reason why Mr. Wright was not initially designated.

17      So for those reasons, Your Honor, we would ask that these

18  deposition designations be excluded.

19          MAGISTRATE JUDGE ADAMS:  Do you know where

20  Mr. Schneider and Ms. Jones are currently?

21          MR. GILLESPIE:  I do not.  Last I heard, word on the

22  street was that Dr. Schneider is in Denver, I believe, so I --

23  but I don't know.  He had a home in Marshalltown at the time

24  that he was with the school, I believe, so we can get the last

25  known address if that would be helpful to Your Honor.

1          MAGISTRATE JUDGE ADAMS:  How about Ms. Jones?

2          MR. GILLESPIE:  I have no idea, Your Honor.

3          MAGISTRATE JUDGE ADAMS:  So at this point we don't

4    know whether they fit the definition of not being available

5    because they're outside the subpoena power?

6          MR. GILLESPIE:  We could absolutely get their last

7    known address, if that would be helpful.

8          MAGISTRATE JUDGE ADAMS:  Well, I mean, you may want

9    that because it sounds like there's going to be some further

10   fight over the use of these depositions at trial.  But the last

11   known address doesn't necessarily tell us where they are, and

12   that's, you know, obviously, another prong of Rule 32 is if

13   there's a witness who is unavailable, and they can be

14   unavailable in a variety of ways, but one of those might be that

15   they're outside the subpoena power of the court.

16      Okay.  All right.  Thank you.

17          MR. GILLESPIE:  Thank you, Your Honor.

18          MAGISTRATE JUDGE ADAMS:  Yes.  Did you want --

19          MS. NARDI:  May I respond?

20          MAGISTRATE JUDGE ADAMS:  You may.

21          MS. NARDI:  First, as to Defendants' argument that it

22   would be cumulative to play Defendant Foxhoven's testimony in

23   court, that argument was actually expressly rejected by the case

24   that Defendants cited, which was the *Estate of Thompson vs.*

25   *Kawasaki Heavy Industries*.  As noted in the plaintiffs' brief,

1   the Court found that the officer could have their testimony

2   played during court, and they explicitly rejected the argument

3   that the deposition testimony should be excluded on the basis of

4   its needlessly cumulative nature.

5        So the Court explained that Defendants' argument, quote,

6   puts the shoe on the wrong foot, end quote, because it would, in

7   fact, be the later use of live testimony to rehash matters

8   already addressed by the deposition testimony that could be

9   potentially cumulative, depending on its contents.

10       It's very important to actually play in court the

11  deposition admissions by Defendant Foxhoven, who made very

12  critical admissions during his deposition, and Plaintiffs do not

13  see the need in doing exactly what *Kawasaki* warns of, rehashing

14  the exact same topics live in court that he already testified

15  to.

16       If Plaintiffs play Foxhoven's deposition during its case in

17  chief, that could not possibly be cumulative because Foxhoven

18  would not have testified yet.  It would only be the later

19  calling of Foxhoven as a witness by Plaintiffs that would be

20  cumulative, and Plaintiffs obviously have no intention of doing

21  that, so that argument under 403 should be rejected as to

22  Foxhoven.

23       As to Defendants' argument that neither Wright nor

24  Schneider nor Jones should qualify as managing agents under

25  23 -- excuse me -- 32(a)(3), that is incorrect.

1      So courts have held that there are many factors that courts

2  must consider in determining whether or not someone should

3  qualify as managing agent under 32(a)(3).  So those factors

4  include whether the interests of the individual involved are

5  identified with the interests of the principal; the nature of

6  his or her functions, responsibilities, and authority respecting

7  the subject matter of the litigation; whether any person or

8  persons in higher authority than the deponent in charge of the

9  particular matter possessed the information sought from the

10  examination.

11      And as several courts have found, quote, particularly in

12  the more recent decisions on managing agent issue, courts have

13  given particular emphasis to the importance of the employee's

14  responsibilities with respect to the subject matter of the

15  litigation.  That was in *Bianco v. Globus Medical Industries*,

16  which is 2014 Westlaw 977686 from 2014, and that collects cases

17  across the circuits.

18      So it's Plaintiffs' position that all of these witnesses

19  have key responsibilities with respect to the litigation and

20  that their superiors do not actually possess the information

21  that was sought during the depositions.

22      So as for both Mr. Wright and Mr. Schneider, psychologists

23  at the school, there is no psychological authority at the school

24  supervising either of them.  There is not a single other mental

25  health professional at the school who can even possibly

1  supervise them.

2      As Schneider admitted during his deposition, which is part

3  of the deposition designations, his only person he reports to is

4  Mark Day, who is the superintendent of the school and has no

5  psychology background.

6      And Mr. Wright also does not report to anyone with a

7  psychology background.  He stated in his deposition that he

8  reports to Lynn Allbee, who is second in command at the Boys

9  State Training School and also has no psychology background.

10      Their decisions that they make on the job as to the boys'

11  mental health are only their decisions, and the mental health of

12  the boys at the school and any mental health care treatment that

13  they may have received was decided by Wright and Schneider

14  without any supervision from anyone else.

15      And, as Your Honor knows, whether or not the boys received

16  constitutionally adequate mental health care is a very key

17  aspect of this litigation.  It's one of the things that we must

18  show for the constitutional claims, and both of these witnesses

19  are most equipped to be able to testify to that.  Defendant Day

20  cannot, Lynn Allbee cannot.

21      It's these two individuals that are very, very crucial and

22  important to the question of whether or not the boys at the

23  school receive constitutionally adequate mental health care, and

24  their responsibilities are intimately linked to litigation,

25  which is another test the courts have used under 32(a)(3).

1      As for Beverly Jones, who is an educator at the school, one

2  of the things that her deposition testimony makes clear is that

3  she had seven classrooms and, during those seven classrooms

4  where she taught, she was able to make the decision as to

5  whether or not to send a boy with mental health disabilities to

6  seclusion, such as the BSU and other things at the school.

7      She also has personal knowledge as to what, if any,

8  education the boys at the school who are stuck in Corbett Miller

9  Hall in solitary confinement may actually receive in terms of

10  their education.  No other witness on this witness list can

11  actually testify to that, and her responsibilities are

12  intimately linked to the nature of the litigation.

13      As we noted, there is not a single other person on either

14  witness list who is an educator, and so the ten minutes of her

15  testimony that solely contain admissions by an employee of the

16  party are very, very important and crucial and intimately linked

17  to this litigation.

18      Your Honor, there is also a completely separate grounds for

19  admitting all four of these depositions as I noted, and that is

20  801(d)(2)(A) and (D).  801(d)(2)(A) states that any party's

21  deposition which contains statements made while they were a

22  party is a party admission under the rule, and 801(d)(2)(D)

23  states that any employee of a party who made statements

24  concerning the party and the litigation during the course of

25  their employment, that those statements within the scope of

1  their employment are admissions under 802(d)(2)(D).

2      And courts throughout the country, including the Eighth

3  Circuit and this court, have found that depositions can be

4  admitted under 801(d)(2)(A) or 801(d)(2)(D) as independent

5  grounds from 32(a)(3).  So under either of those grounds, the

6  depositions should be admitted.

7          MAGISTRATE JUDGE ADAMS:  All right.  The video clips

8  of the depositions of the four individuals here, does it contain

9  information in it from which the Court could determine -- So,

10  for example, you just described to me what both Wright and

11  Schneider's roles were at the school and who they reported to.

12  The videotape excerpts that you're planning to use, does it have

13  information in it that shows that such that there would be a

14  record in front of the Court from which the Court could then

15  make a determination as to whether or not these individuals

16  would qualify as a managing agent, et cetera?

17          MS. NARDI:  That's an excellent question.  So the

18  short answer is yes.  So of all of the initial testimony that we

19  designated with the deposition designations, that information is

20  contained.

21      With respect to the four videos that we intend to play at

22  trial, so the excerpts that we cut down for efficiency purposes

23  so the trial would go nice and quickly, those contain the most

24  key admissions from each of those four individuals.

25      Looking at -- I'm not sure if looking at just those key

1    admissions, which are excerpts of our deposition designations,

2    would definitively show every single point I just mentioned, but

3    within the scope of what we did designate, yes, it would

4    definitely show that.

5        If Your Honor would like, I have a copy of those four

6    depositions with highlights on the excerpts that we plan to play

7    at trial, if that would be helpful for the Court.

8            MAGISTRATE JUDGE ADAMS:  Do you have -- So you've got

9    a transcript of the depositions?

10           MS. NARDI:  Yes.

11           MAGISTRATE JUDGE ADAMS:  And within that transcript,

12   you could provide to the Court the places in the transcript and

13   the language and you could give us a copy of the transcript and

14   then tell us where in the transcript the Court could look --

15           MS. NARDI:  Yes.

16           MAGISTRATE JUDGE ADAMS:  -- for the information that

17   you have described that would identify whether or not they would

18   be potentially managing agents, et cetera, and then the

19   defendants could respond to that?

20       I hate to make you do more briefing, but I think this is,

21   obviously, an issue that we need a record on, and I'm concerned

22   that we don't have that record here in front of us today.  So

23   what I'd like to do is have both of you file, it can be very

24   brief, short, concise brief just dealing with these four

25   witnesses.

1          And to be most honest, I think the primary ones you need to

2    focus on are Wright, Schneider, and Jones.  Foxhoven, obviously,

3    is a named defendant so we have a different set of circumstances

4    there.  Provide the Court with the portions of the deposition

5    transcript that would provide the Court with the information so

6    that Judge Rose can make a determination as to what these

7    people's roles were and whether they would qualify under either

8    of the rules, either Rule 32 or the rule of evidence that you've

9    described, 801.

10         So if you could do that by May 14th and just file those

11   simultaneously, that would be helpful, I think, for the Court to

12   have, okay?

13              MS. NARDI:  Yes.  Thank you, Your Honor.

14              MR. GILLESPIE:  Yes, Your Honor.

15              MAGISTRATE JUDGE ADAMS:  And I'll note that in my

16   final pretrial order too so we know that that's in there.

17              MS. NARDI:  Thank you.

18              MAGISTRATE JUDGE ADAMS:  You're welcome.

19         All right.  Anything else that we need to talk about

20   relating to -- Oh, I do have one other question about the

21   depositions.  Are there any objections, specific objections that

22   were made at the deposition, that the Court needs to rule on

23   with respect to the portions that they're planning to use for

24   the four, Foxhoven, Wright, Schneider and Jones?

25              MR. GILLESPIE:  Yes, Your Honor, there are.

1          MAGISTRATE JUDGE ADAMS:  All right.  So I need that as

2   well.  We need to have that for Judge Rose so she can see.  So

3   just give her a copy.  One of you just provided the transcripts.

4       Plaintiff, you can provide those.  And then if you can let

5   her know which pages, lines, et cetera, there are objections

6   that she will need to rule on relating to the limited provisions

7   that you're planning to use, okay?

8          MS. NARDI:  Yes, Your Honor.  I'd just like to note on

9   behalf of Plaintiffs that we have not received any specific

10  objections by Defendants to any of the specific lines that we

11  designated, and pursuant to 26(a)(3)(B), any objections, new

12  objections, that were not made within 14 days of the pretrial

13  disclosures are expressly waived under the rule.  So we would

14  just note that to the extent that Defendants now have --

15          MAGISTRATE JUDGE ADAMS:  Maybe --

16          MS. NARDI:  Go ahead.

17          MAGISTRATE JUDGE ADAMS:  Maybe I'm not asking a very

18  good question.  What I'm concerned about is at the deposition,

19  I'm assuming you guys didn't get through every single deposition

20  without anybody making any objection in the deposition.

21          MS. NARDI:  That's correct.

22          MAGISTRATE JUDGE ADAMS:  Good assumption on my part.

23          MS. NARDI:  Yes.

24          MAGISTRATE JUDGE ADAMS:  So what I'm wanting to know

25  is, I know that you pared down the provisions you want, but if

1  they made an objection during the deposition that they still

2  think the Court needs to rule on --

3          MR. GILLESPIE:  Yes, Your Honor.

4          MAGISTRATE JUDGE ADAMS:  -- relating to that pared

5  down provision, that's what I'm asking for.

6          MS. NARDI:  Yes.

7          MAGISTRATE JUDGE ADAMS:  That's why we need the

8  transcripts.

9      Okay.  Tracking with me, everybody?

10         MS. NARDI:  Yes, Your Honor.

11         MR. GILLESPIE:  Yes, Your Honor.

12         MAGISTRATE JUDGE ADAMS:  All right.  Anything else

13  about witnesses, Ms. Kraemer?

14         MS. KRAEMER:  May I ask a question?  What we've been

15  given are page numbers.

16      If you have the actual transcript excerpt, may we have that

17  since we're doing simultaneous briefing?

18         MS. NARDI:  Certainly.  Would Your Honor like a copy

19  of that as well?

20         MAGISTRATE JUDGE ADAMS:  Actually, I think -- I mean,

21  yeah, you can highlight.  Why don't you highlight in the

22  transcript that you give -- give us a full transcript, but then

23  in the transcript highlight the portions that you're going to be

24  utilizing, okay --

25         MS. NARDI:  Okay.

1          MAGISTRATE JUDGE ADAMS:  -- for purposes of the

2   deposition.

3      But I also need you to tell us which portions of that

4   transcript relate to the information that the Court needs to

5   make the determination as to use of the depositions.

6          MS. NARDI:  Yes.  Understood.

7          MAGISTRATE JUDGE ADAMS:  Okay.  Got it?

8          MS. NARDI:  Thank you, Your Honor.

9          MAGISTRATE JUDGE ADAMS:  And if you want to do that in

10  two colors and just tell us that, you know, green is related to

11  what we're going to use at trial, blue is something we're not

12  planning to use at trial but we think it would be relevant to

13  the Court for purposes of the ruling, okay?

14          MS. NARDI:  Okay.  Certainly.

15          MAGISTRATE JUDGE ADAMS:  Okay.  All right.  Anything

16  else on witnesses?

17      Judge Rose, anything?

18          JUDGE ROSE:  I don't think so.  I do have --

19          MAGISTRATE JUDGE ADAMS:  Yes?

20          JUDGE ROSE:  I do with have one rule in multi-attorney

21  cases; one witness, one attorney.  So whichever one of you

22  speaks first inherits that attorney -- or that witness.  So make

23  sure you don't get overeager in making an objection because you

24  just inherited that particular person if you go down that path.

25      Other than that, you've covered everything that I can think

1  of.

2          MAGISTRATE JUDGE ADAMS:  All right.  Let's talk a

3  little bit about exhibits.

4      Did you have something, Ms. Kraemer?

5          MS. KRAEMER:  One final request.  Mr. Day would like

6  permission to leave at around 4 on days that he's not

7  testifying.

8          MAGISTRATE JUDGE ADAMS:  That's up to Judge Rose.

9          JUDGE ROSE:  I don't have a problem with that.

10          MAGISTRATE JUDGE ADAMS:  I mean, it's not a jury

11  trial, so you don't have the same issues.

12          MS. KRAEMER:  To the extent you wanted it all out

13  there.

14          JUDGE ROSE:  Plaintiff, any reason you would object to

15  that?

16          MS. NARDI:  No objection.

17          JUDGE ROSE:  Okay.

18          MAGISTRATE JUDGE ADAMS:  All right.  Let's talk a

19  little bit about exhibits.  Have you guys actually physically

20  exchanged exhibits with each other?

21      So you've got their exhibits and they've got your exhibits?

22          MR. FRISCHER:  Yes, Your Honor.

23          MAGISTRATE JUDGE ADAMS:  Okay.  Perfect.  Good.

24      Now, it's my understanding, and correct me if I'm wrong,

25  that you wanted to continue to have some discussion with each

1   other about the objections that we have so far.  Is that fair?

2   Am I understanding that or no?

3           MR. FRISCHER:  We've had many meet-and-confers, Your

4   Honor --

5           MAGISTRATE JUDGE ADAMS:  Okay.

6           MR. FRISCHER:  -- and we've made some headway on

7   objections.  Other issues, we've not made headway on.  I think

8   the trial briefs, both trial briefs, outline the issues where

9   we've not reached conclusion.  I'm not sure there's more to be

10  done in meet-and-confer in those particular issues.

11      You know, there may be a thing -- I think we've identified

12  all duplicative exhibits.  I'm not certain.  You know, there may

13  be more work to do on those more technical issues relating to

14  the exhibits, but on the issues that are highlighted, that's the

15  result of our meet-and-confer process.

16          MAGISTRATE JUDGE ADAMS:  Okay.  And that's fine.  I

17  just wanted to see where you were because I know sometimes

18  people will come back later and say, oh, we've changed

19  designations on some exhibits, and that's important for us to

20  know because we're working off what you've given us, and so if

21  we think there are objections to it, we're kind of looking at

22  that.

23      You have in front of you, I left on both of your counsel

24  tables, an exhibit list.  It's a format that the AO uses that we

25  would like you to give us an exhibit list that has all of your

1   exhibits in that.  That's helpful for the clerk, the courtroom

2   deputy, and the court reporter.  So if you can use it in that

3   format, that way we can keep track when something's been

4   offered, whether there's been an objection, admission, et

5   cetera.  So if you could put your exhibit list into that order,

6   that would be helpful.

7        You've got exhibits that you've marked, and I know you have

8   three sets of exhibits.  We've got the plaintiffs' set of

9   exhibits, we have the defendants' set of exhibits, and then you

10  have a smaller set that you've marked as joint exhibits.

11       So anything that is marked as an A exhibit, whether it's a

12  joint exhibit or Plaintiffs' or Defendants', if you put it into

13  the A category, that's in evidence from the start of trial.  You

14  don't have to offer that.  In our rules, it's considered already

15  in so you can just go ahead and use that with your witnesses.

16       B and C exhibits, however, are not considered in so those

17  are going to actually have to be offered.  You'll make your

18  objections on the record for Judge Rose, and then she'll make a

19  ruling, okay?

20       What do you want in terms of exhibits, Joe?  You may have

21  maybe already talked with counsel about what you're going to

22  want.

23            THE LAW CLERK:  Yes.  We prefer three hard copies of

24  the exhibits for chambers prior to trial.

25       Okay.  Just two.  Sorry.

1          MAGISTRATE JUDGE ADAMS:  And then with respect to your

2    witnesses, you can have hard copies, that would be helpful, but

3    are any of you planning to use any kind of electronic showing of

4    exhibits?

5          MS. KRAEMER:  Yes.

6          MAGISTRATE JUDGE ADAMS:  So your witnesses are going

7    to have a monitor in front of them.  You have a lot of exhibits,

8    so it may be easier for the witnesses for you to put the exhibit

9    up on your monitor rather than having them go through six

10   different binders trying to figure out which exhibit binder

11   notebook they should be in.

12        Now, some people, if they have any -- some people are not

13   comfortable looking at exhibits that way, so it's probably good

14   to have a set of your exhibits that you can use for the witness.

15   What I would suggest to you, though, is that if you're going to

16   do that -- you'll each have enough counsel here that you can do

17   this -- have someone who could go up and pull the exhibit

18   notebook, the proper one, get them to the exhibit if they need

19   it so that they're not struggling to go through and figure out

20   which exhibit notebook it's in.

21        But to the extent you're going to use them electronically,

22   they're going to have a monitor in front of them that may be

23   easier for them to utilize so I just wanted you to be aware of

24   that.

25          JUDGE ROSE:  It is a touch screen as well so they can

1   make marks or you can blow things up or push them down.

2       And if you want to practice with your technology in my

3   courtroom before the trial starts, you can call our chambers,

4   and we'll set up a private time for you to be in the courtroom

5   and get comfortable with that technology.

6       Now, as everything in this old building does, technology

7   occasionally just fails for no apparent reason.  We can usually

8   get it fixed, and we have the advantage of not having a jury

9   waiting on us in this case so we can have IT people sort of

10  standing in there messing with stuff while we're talking or

11  doing other things.  So we'll get it up and running again,

12  usually, within an hour or so, but a backup notebook is never a

13  bad idea if it's a key, key document.

14          MAGISTRATE JUDGE ADAMS:  And I would say do try your

15  technology out in the courtroom.  And here's the other piece of

16  advice I would give you:  Whatever computer or electronic device

17  you're going to use at trial, when you go in to try it out, use

18  that one because we've had people come in and use a laptop and

19  it works great, and then they come in for trial and they use a

20  different laptop, and for some reason it doesn't sync up.  So

21  use whatever you're going to use for trial, use that on your

22  practice run with Judge Rose's courtroom.

23          JUDGE ROSE:  We'll also be using the courtroom only

24  for this trial during the time that you're in trial so you can

25  leave your belongings there.  We'll keep the courtroom locked.

1   Over the lunch hour we'll have it locked, and we won't let only

2   one side in at a time unless we're in the courtroom too or at

3   least one of our staff people is in the courtroom.

4       So you're welcome to not haul your boxes in and out every

5   single day.  So you can leave computers, if you want to.

6   Certainly, I would hope it would be secure.  Mine's sitting in

7   there.  So feel free to kind of plan around those ideas too.

8               MAGISTRATE JUDGE ADAMS:  All right.

9           MS. NARDI:  Your Honor, could I just --

10              MAGISTRATE JUDGE ADAMS:  No.  Go ahead.  You're fine.

11          MS. NARDI:  We just have a question about projecting

12  exhibits during trial.  So as you both know, there are several

13  exhibits that contain confidential names of the students at

14  BSTS, so we spoke with opposing counsel, and as long as the

15  Court has the capabilities of doing so, our preference is to use

16  exhibits freely at trial, show them on individual monitors that

17  are available for the witness, counsel, Your Honor, the Court,

18  and then to the extent that there is a large projector in the

19  courtroom, those documents containing confidential identities

20  would just not be projected onto the large jumbotron screen,

21  assuming that we have that capability.

22              JUDGE ROSE:  We do, and we use it in like child

23  pornography cases where we just turn off certain screens.  So we

24  are accustomed to that.  The one thing I would say is, depending

25  on how big the names are, you'll be sitting at counsel table

1   with a screen --

2             MAGISTRATE JUDGE ADAMS:  Somebody behind you.

3             JUDGE ROSE:  -- you know, of this size, and if

4   somebody is behind us, they can potentially see over your

5   shoulder, unless you click your bottom button and turn your

6   screen off --

7             MS. NARDI:  Okay.

8             JUDGE ROSE:  -- which isn't going to be real useful to

9   you for that particular witness.  So that's the only thing that

10  could become problematic.

11      But I don't see that -- I don't think we're going to have a

12  huge crowd.  Now, you guys may be able to judge that more, but

13  we do have that capability.  And you can practice that if you

14  want to, if you come do a technology run-through.

15            MS. NARDI:  Okay.  Terrific.

16      One other thing on confidentiality.  So we've instructed

17  our witnesses, and I'm sure opposing counsel will do the same,

18  not to use in open court the real identities of the named

19  plaintiffs or other boys at the school.  However, with that

20  being said, sometimes people will slip during the course of

21  trial, so we have two suggestions, and both parties have agreed

22  to, assuming that it's okay with the Court.

23      One of which is, to the extent that somebody accidentally

24  mentions a confidential name on the record, to have an

25  instruction for the court reporter to remove that confidential

1   name from the official transcript and to either replace it with

2   a pseudonym or to just remove it so that the name skips over in

3   the transcript.

4          JUDGE ROSE:  So the process that we have for redacting

5   the court transcript is that, if it's ordered by one of the

6   parties, then there's a period of time where the parties have

7   received sort of the unredacted version and you have so many

8   days to tell the court reporter what you want redacted from it.

9   There are some that are automatically done, you don't need a

10  court order from me.

11          (Discussion off the record.)

12          JUDGE ROSE:  So you'll have so many days to send in a

13  request saying we would like line such-and-such on page this

14  redacted or we would like line such-and-such redacted.  That

15  goes to the court reporter.  As long as those are minors' names

16  or Social Security numbers or things that are part of our local

17  rule that can be redacted without further order of the Court,

18  the court reporter will automatically remove those before the

19  final that's available to the public is seen.  But that is

20  generally going to be the responsibility of the parties.

21          MS. NARDI:  Yes.

22          JUDGE ROSE:  The court reporter really doesn't have

23  authority, if I sort of mid-trial go, "Fix that," to go back and

24  fix it.  It happened.  She's writing exactly what happens.

25          MS. NARDI:  Yes.

1        JUDGE ROSE:  It's sort of the same way as if you start

2   talking in a foreign language, her transcript is going to say

3   "Talking in a foreign language," it's not going to have the

4   Russian translation.  It has to reflect what's happening with

5   what's going on in the courtroom.

6       So that's the process.  Of course, we'll all try not to do

7   that, but if it does happen and if the transcript is ordered,

8   that's the process to fix the situation.

9        MS. NARDI:  Okay.  Thank you for the explanation.

10       We also thought that it would be helpful to have a list of

11  the named plaintiffs' pseudonyms and their real identities at

12  the witness stand so if somebody forgets, oh, what's the name

13  that I'm supposed to use for this person, if you just look down

14  at the key card that would list that.

15       And we, with opposing counsel, have agreed on a simple key

16  card, if Your Honors would like, I can present to the Court for

17  your review.

18        JUDGE ROSE:  Yeah.  That's fine with me.  I'd make

19  sure our court reporter has one too --

20        MS. NARDI:  Okay.

21        JUDGE ROSE:  -- and probably that I do.

22        MAGISTRATE JUDGE ADAMS:  Yes.

23        JUDGE ROSE:  Not today, but at trial.  That would help

24  us as well.

25        MS. NARDI:  Okay.

1          MAGISTRATE JUDGE ADAMS:   That's fine.   The other thing

2   I would suggest is if there are unusual names, unusual words

3   that have odd spellings, or if there are any abbreviations that

4   you'll be using, please provide a glossary to the court reporter

5   so they have that.   That makes their life much easier, and I can

6   tell you that if they're happy, that makes us happy, so --

7          JUDGE ROSE:   Makes for a better transcript too if

8   there are certain acronyms you know you're going to be using,

9   SHU, you know, something like that, or if there are certain

10  medications you're going to be discussing.

11     Kelli is our court reporter, and she'll be our court

12  reporter.   She's a walking, talking encyclopedia all by herself,

13  but we still try and give her help whenever we can so --

14         MS. NARDI:   That makes sense.   Will do.   Thank you.

15         MAGISTRATE JUDGE ADAMS:   Two other things about the

16  exhibits.   The first one is I left on your counsel table a copy

17  of our Local Rule 83(e).   The reason I did that is I wanted to

18  draw your attention to subparagraph (d).   That paragraph

19  indicates what you have to do in terms of the exhibits.

20     We don't, our clerk's office does not, keep your exhibits

21  anymore.   They need to be filed after the trial.   I mean, you

22  don't have to worry about filing them as you're going, but what

23  you're going to have to do is file the ones that you use.

24     To the extent that any of them have confidential

25  information in them, you can file them under seal, but you

1 just -- what you probably will end up doing is doing one filing

2 of the exhibits that aren't confidential and then a second

3 filing of your exhibits that are confidential that need to be

4 filed under seal, okay?

5     But I wanted you to be aware of that because that's a

6 fairly frequent -- fairly new change in our local rules in terms

7 of exhibits, and then you just keep your exhibits, the originals

8 of your exhibits, after the trial.

9     Now, obviously, if you have an exhibit that you utilize

10 that cannot -- that's a physical exhibit, and I don't know if

11 you do, but if you do have any physical exhibits that you can't

12 electronically file, you will just make a notation and you'll

13 file a piece of paper that says "Exhibit 26" and then a

14 description of what it was.  And if you have questions, the

15 clerk's office --

16          THE DEPUTY CLERK:  Take a picture.

17          MAGISTRATE JUDGE ADAMS:  There you go.  Take a

18 picture.

19     And the clerk's office can help you if you have questions

20 when you get to that stage, but I wanted you to be aware of that

21 because, as I said, that's a fairly recent change in our rules.

22     The last thing is the exhibits you've given to me, the set

23 you've already given to me that I've had a chance to look at, I

24 will give those to Judge Rose's chambers so you can count that

25 as one of your sets of exhibits that will go to them.  I am more

1  than happy to have those dropped off today.

2          JUDGE ROSE:  And I don't need my -- we don't need our

3  second set until the morning of trial because we can share until

4  then.  And then Kelli and I will share during the course of the

5  trial.

6          MAGISTRATE JUDGE ADAMS:  All right.  Anything else

7  about exhibits that anybody can think of?  I know you have a

8  number of objections.  Those will be dealt with as we get to

9  those as the Court moves through those at trial.

10     Anything else?

11         MR. FRISCHER:  Yes, Your Honor.  We had a question.

12  Since we're on Local Rule 83(e), we did have a question about

13  that, particularly on (j), with demonstrative aids, and

14  particularly the last phrase that talks about outlines of

15  opening statements or closing arguments.

16     And the question we had for the Court is -- Let me put it

17  this way:  Typically, in opening statements, we don't disclose

18  to the other side, nor does the other side disclose to us, what

19  we're going to say.

20         JUDGE ROSE:  Yeah.

21         MR. FRISCHER:  In addition to saying things orally,

22  we'd like to display some things on the screen visually in

23  connection with opening arguments which aren't exactly an

24  outline of the opening argument, but they're sort of like an

25  outline of the opening argument, to illustrate points that we're

1  making.

2       In trials that I've done recently, courts have not

3  typically required those to be exchanged in advance.  In some

4  cases, courts have required those to be exchanged in advance,

5  and, frankly, I don't think that makes a lot of sense given it's

6  in the nature of the opening statement, but I just wanted to

7  understand from the Court what the Court's practice was with

8  respect to that.

9            MAGISTRATE JUDGE ADAMS:  Are you envisioning that

10 those would be exhibits or things that you've put in as exhibits

11 or could they be other things that are not proposed exhibits?

12           MR. FRISCHER:  Some will be exhibits that will be

13 stipulated into or are already stipulated into evidence.  Some

14 will be not exhibits that typically are demonstrative aids;

15 bullet points, a bullet point with three bullets under it,

16 things like that.

17           JUDGE ROSE:  This mostly applies, at least we've seen

18 it mostly apply, in criminal cases where there are PowerPoint

19 presentations that have been created.  I don't need them until

20 the trial is completed so you don't have to exchange them before

21 you've even used them.  If all you're doing is talking and using

22 exhibits that will come in during trial, that's fine, as long as

23 you reference what the exhibit number is.

24      Again, all we're trying to build is an appellate record so

25 if there's some accusation that somebody -- if there's an

1   objection drawn during opening or closing about something that's

2   being displayed so I can say to the appellate court here's what

3   was being displayed.

4            MR. FRISCHER:  Yes.  Just like there's a transcript of

5   what's said, there's a record of what's shown.

6            JUDGE ROSE:  Correct.

7            MR. FRISCHER:  But it's not something that needs to be

8   exchanged or vetted in advance?

9            JUDGE ROSE:  Correct.  So by the end of trial we'll

10  say to you we need a copy of what you showed, if it was a

11  PowerPoint or it was slides of some kind that aren't, as

12  Ms. -- I'm sorry -- as Judge Adams already said, you know,

13  exhibits or something else that's already part of the record.

14  Same with closing argument and rebuttal, if you have those kinds

15  of slide shows.

16       Now, if you know you're going to cause a big kerfuffle with

17  whatever you're about to show, you might want to show it to

18  opposing counsel first so we can have that fight first before

19  you're in the middle of opening and closing.  But, again, the

20  nice thing about this particular trial is it's a bench trial and

21  we can do a whole lot more sort of massaging of issues than we

22  would have to do in front of a jury.

23           MR. FRISCHER:  Thank you, Your Honor.

24       And a related question is with respect to closings.  And I

25  think you may have just answered the question of whether the

1   Court will require oral summations at the end of trial, whether

2   that's in addition -- I assume the Court will want post-trial

3   proposed findings of fact and conclusions of law and post-trial

4   briefing, and my question to the Court is whether that will be

5   required in lieu of oral summations or in addition to oral

6   summations.

7            JUDGE ROSE:  And this is really up to the parties.  If

8   you would like to do written briefing, you can do written

9   briefing.  I think it would probably be useful.  These are

10  complex issues.  It's a class action.  My assumption is with a

11  trial this lengthy and this many experts there's going to be a

12  fair amount for me to digest and you all would be helpful to me

13  in helping point out things that I may or may not have fully put

14  together in my mind as this evidence was being listened to.

15       Oral arguments, same thing.  If you think they would be

16  helpful, I'm happy to hear them in addition to written or

17  instead of.  Again, I think written is going to be helpful here

18  because of the complexity of the things we're talking about and

19  the number of different permutations that could come into factor

20  here.

21       But some people are great orators and I'm always happy to

22  hear their take on things and their arguments and some people

23  hate that, and that's fine too.  So I leave you to think about

24  that, and that could be something you all --

25            MR. FRISCHER:  Yeah.

1          JUDGE ROSE:  -- talk about after you've seen how trial

2     went.  Maybe at the end of it you feel strongly one way or the

3     other.

4          MR. FRISCHER:  Thank you.  Very good.

5          JUDGE ROSE:  Do you have any questions?  I guess are

6     you --

7          MAGISTRATE JUDGE ADAMS:  I've got a couple more.

8          JUDGE ROSE:  Let me let you finish making your way

9     through, and I can always stay if you need to get on to other

10    things.

11          MAGISTRATE JUDGE ADAMS:  Sure.  Just a couple

12    additional things.

13        One thing I did want to mention about local Rule 83(e),

14    specifically that section you mentioned, it was primarily added

15    to avoid things like Judge Rose mentioned but also to avoid a

16    situation like the following:  There is an exhibit that one

17    party wants to put in, it's objected to over and over again and

18    it's sustained every time, and then all the sudden in closing

19    argument the party who tried to introduce it all the sudden just

20    says, well, now it's a demonstrative aid and presents it as a

21    demonstrative aid.

22        Now, you laugh, but I just had a trial where that happened,

23    and that's an issue that's going to go up on appeal as to

24    whether I allowed this particular demonstrative aid in, so

25    that's something you should be aware of.  I don't anticipate you

64

1   doing anything of that nature, but I just wanted to highlight

2   that for you.

3       Opening statements.  Pursuant to our local rule, typically

4   they're 15 minutes each side.  This is a very different case.

5   Are you planning to, do you want to do opening statements or do

6   you just want to start with your evidence?

7           MR. FRISCHER:  Your Honor, we thought that the local

8   rule of 15 minutes is a good rule, and we intend to do a short

9   15-minute opening statement just to focus the issues.

10          MAGISTRATE JUDGE ADAMS:  All right.  Defendants?

11          MS. KRAEMER:  Yes, Your Honor.  We intended a short

12  opening as well.

13          MAGISTRATE JUDGE ADAMS:  Perfect.  Then I'll just note

14  that in the order, then, that the openings will be limited to 15

15  minutes each side, and then with respect to closing arguments,

16  I'll just indicate that that's a matter that the parties will

17  discuss with the Court closer to the end of the trial, and Judge

18  Rose can enter an order with respect to whatever you decide in

19  that regard.

20      Judge Rose, what time, trial time, start time and finish

21  time, do you anticipate?

22          JUDGE ROSE:  I generally keep a trial schedule of 8:30

23  to 5.  Now, I usually do that because we want to make sure the

24  jury has time to have a decent lunch because it's hard to kind

25  of find places if you're new to Des Moines to go eat.  But when

1  I do that, I usually start with the lawyers slightly earlier

2  than that to cover any issues we have to discuss and then we

3  bring the jury in at 8:30.  Now, we could start at 8:30, get any

4  issues out of the way we need to talk about, then start in with

5  evidence right after that.

6      I pretty religiously take breaks every hour to two hours.

7  So if you're somebody like I was as a trial attorney who just

8  refuses to eat or drink during trial because, God forbid, you

9  need a restroom and you're not going to get a chance to go for

10  six hours because the trial judge is a camel, I'm not.  Plus if

11  you raise your hand and tell me you'd like a break, we're going

12  to take a break, or if any of my staff does the same, we're

13  going to take a break.

14      So if there's a natural breaking point around that time,

15  we're going to take breaks.  So normally I have about a

16  20-minute break in the morning, normally I have about an hour

17  and 15 minutes for lunch, and normally I have another 20-minute

18  break in the afternoon, and then we typically break for the day

19  around 4:30 and then kind of do any wrap-up of any issues we

20  need to discuss and everybody gets out of there before the 5

21  o'clock real traffic hits.

22      We can keep that same schedule if you think that will work

23  for your witnesses.  I find that if we start at 8:30, somehow we

24  gain an hour.  I don't know why if you start at 9 and then you

25  have a break, somehow by the end of the day you've lost an hour

1   instead of a half-hour.  I'm not great at math, but that's how

2   it seems to work out.  So that's typically the schedule I keep.

3        I allow attorneys, and here Mr. Day and the boys, if

4   they're here, you're all welcome to bring drinks into the

5   courtroom if you want coffee or soda or water, as long as it's

6   with a lid so that if it tips over we can save our carpet or our

7   woodwork or something else.  If the CSOs give you a hard time,

8   let me know, I'll visit with them, but they've been pretty good

9   about it in prior trials.  So you are welcome to do that.

10  You're welcome to, you know, have snacks on your breaks and

11  things of that nature.

12       And, as I said, you'll have exclusive use of the courtroom

13  during the time that this trial is going on so you're welcome to

14  pick your tables, unpack your stuff.  Obviously, nobody's to

15  touch anybody else's stuff, but we'll always have somebody in

16  the courtroom if either side is in the courtroom; otherwise,

17  we'll keep the courtroom locked.

18       I'm trying to think through any other of my normal pretrial

19  stuff I go over with lawyers.  Judge Adams covered nearly

20  everything I could think of.

21       Do you have any other sort of just informal stuff?

22            MR. KIRSTEIN:  Yes, Your Honor.  Just had a question

23  about during break time.  Is there a designated break room for

24  plaintiffs' counsel, witnesses, and defendants or not?

25            MAGISTRATE JUDGE ADAMS:  There really isn't.  There

1   is, down on the ground floor, there is a little vending machine

2   area that has tables and things in it, so if you want to go down

3   there, you certainly can.  But we really don't have areas set up

4   for -- I mean, if there's not a jury on your floor, we could

5   maybe open the jury room and you could -- somebody could sit in

6   there if you needed a place where you're not -- you know, so

7   you're not all together while you're talking, but that's

8   probably the best we have available.

9             JUDGE ROSE:  Yeah.  It's not a great setup for lawyers

10  that are civil.  We've got some -- you know, there's like a

11  little fed defender hole and there's a little U.S. Attorney

12  hole, but there's not really much for civil folks.

13            MAGISTRATE JUDGE ADAMS:  And when she says for lawyers

14  that are civil, we expect you all to be civil.

15       All right.  Just a couple other things.  Please remind your

16  clients and your witnesses to bring an ID with them to get in.

17       Remind them where the location of the federal courthouse is

18  in Des Moines.  You wouldn't believe how many times they go

19  either to the federal building or to Polk County Courthouse.  So

20  make sure they understand it's right across from the Embassy

21  Suites.

22       And then, again, remind them to leave cell phones and

23  computers either at home or locked in their car, except I will

24  enter an order so Mr. Day can bring his cell phone in.  That

25  should not be an issue.

1          JUDGE ROSE:  No pocket knives.  A lot of guys carry

2     pocket knives, and they can't get in with that either.

3          MR. KIRSTEIN:  Your Honor.

4          MAGISTRATE JUDGE ADAMS:  Yes.  Go ahead.

5          MR. KIRSTEIN:  If some of the named plaintiffs do not

6     have photo IDs or state IDs yet, what is to be done about that

7     when they enter into the courthouse?

8          MAGISTRATE JUDGE ADAMS:  You can go down and vouch for

9     them at the front door --

10          MR. KIRSTEIN:  Okay.

11          MAGISTRATE JUDGE ADAMS:  -- with the court security

12     officers.  And we'll let them know that.

13       If you can let me know if there are specifically any who

14     don't have an ID so that I can at least give them the

15     corresponding name so that the person shows up and says I am

16     so-and-so and I don't have an ID, they are at least aware that,

17     okay, this is somebody who we need to make contact with counsel,

18     okay?

19          MR. KIRSTEIN:  Okay.  Thank you, Your Honor.

20          MAGISTRATE JUDGE ADAMS:  Sure.  I can put that in the

21     order.

22       All right.  I think I have covered everything I have.  Do

23     you all have any other questions for Judge Rose?

24       Plaintiffs, anything else?

25       And if you think of anything, you can just -- you can

1   e-mail Joe, and he can help you get answers to things as we go.

2        And I will, just so you all know, enter an order later

3   today that will cover many of the things that we've talked

4   about, and to the extent that I've given you deadlines to do

5   things, it will include what those things are and what the

6   deadlines are so you'll have that as well.

7        Anything, Plaintiffs?

8            MR. FRISCHER:  Nothing further from Plaintiffs, Your

9   Honor.

10           MAGISTRATE JUDGE ADAMS:  Anything on behalf of

11  Defendants?

12           MS. KRAEMER:  No.  Thank you, Your Honor.

13           MAGISTRATE JUDGE ADAMS:  Okay.  And like I said, I

14  will give Judge Rose's office my copy of exhibits now so that

15  they will have that, and then we'll look forward to your

16  additional briefing that you're going to do on the issues we

17  talked about, and we'll deal with that.

18       All right.  Thank you.

19           MR. FRISCHER:  Thank you, Your Honor.

20           (Proceedings concluded at 10:34 a.m.)

21

22

23

24

25

1        C E R T I F I C A T E

2        I, Kelli M. Mulcahy, a Certified Shorthand Reporter of the

3   State of Iowa and Federal Official Realtime Court Reporter in

4   and for the United States District Court for the Southern

5   District of Iowa, do hereby certify, pursuant to Title 28,

6   United States Code, Section 753, that the foregoing is a true

7   and correct transcript of the stenographically reported

8   proceedings held in the above-entitled matter and that the

9   transcript page format is in conformance with the regulations of

10  the Judicial Conference of the United States.

11       Dated at Des Moines, Iowa, this 19th day of May, 2019.

12

13

14                        /s/ Kelli M. Mulcahy
                          Kelli M. Mulcahy, CSR, RDR, CRR
15                        Federal Official Court Reporter

16

17

18

19

20

21

22

23

24

25